1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   JANE DOE AND JANE ROE                Case No.:   16CV750-W(BLM)

12                         Plaintiffs,    **REPORT AND RECOMMENDATION FOR**
                                          **ORDER GRANTING IN PART AND**
13   v.                                   **DENYING IN PART JUDGMENT**
                                          **CREDITOR'S OPPOSITION TO MARSHA**
14   ELAINE C. DUKE, Acting Secretary of the   **GONZALEZ'S CLAIM OF EXEMPTION RE**
     Department of Homeland Security, et al.,   **LEVY ON CABRILLO CREDIT UNION**
15
16                         Defendants.    **[ECF No. 98]**

17          This Report and Recommendation is submitted to United States District Judge Thomas J.

18   Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3(f) of the United States District

19   Court for the Southern District of California.   For the following reasons, the Court

20   **RECOMMENDS** that Judgment Creditor's motion be **GRANTED IN PART AND DENIED IN**

21   **PART**.

22                          <u>**PROCEDURAL BACKGROUND**</u>

23          The instant matter was initiated on March 30, 2016 when Plaintiffs filed a complaint for

24   Biven claims, sexual discrimination, sexual harassment, failure to prevent discrimination and

25   harassment, retaliation, intrusion into private affairs, public disclosure of private facts,

26   intentional infliction of emotional distress, negligence, recording of confidential information,

27   negligent supervision, hiring, and retention, and gender violence.  ECF Nos. 1, 6, and 29.  The

28   complaint was based on Defendant Armando Gonzalez's alleged activities in 2013-2015.  <u>Id.</u>  On

                                             1

December 14, 2015, Defendant Gonzalez plead guilty to crimes associated with the allegations made in the complaint and was later incarcerated for twenty-one months.   ECF No. 98-2 ("Oppo.") at 1.

On May 5, 2016, Plaintiffs served Defendant Gonzalez with the summons and First Amended Complaint ("FAC").   ECF No. 8.   Defendant Gonzalez failed to answer or respond to the FAC, and on October 19, 2017, Plaintiffs filed a Request for Entry of Clerk Default, which was entered on October 20, 2017.   ECF Nos. 53- 56.   On November 17, 2017, Plaintiffs filed a motion for default judgment. ECF No. 62.   On December 14, 2017, Defendant Gonzalez filed an opposition and requested leave to file an answer.   ECF No. 67.

On July 3, 2018, the Court issued an order granting in part Plaintiffs' motion for default judgment and ordering additional briefing on damages.   ECF No. 69.   After considering the supplemental briefing, the Court issued an order awarding

> Plaintiff Doe: $3,250,000 in compensatory damages, $2,500,000 in punitive damages, $34,000 in reasonable attorneys' fees and $5,000 in costs.  Plaintiff Roe: $3,250,000 in compensatory damages, $2,500,000 in punitive damages, $34,000 in reasonable attorneys' fees and $5,000 in costs.

ECF No. 79.  On February 28, 2019, the Court entered two orders of judgment following entry of default against Defendant Gonzalez and in favor of Plaintiffs Roe and Doe for $5,789,000.00 each. ECF Nos. 82 & 83. Defendant Gonzalez ("Judgment Debtor") has not paid any money toward the judgment.  Oppo. at 1.

On June 25, 2020, Plaintiff Jane Doe ("Judgment Creditor") levied Judgment Debtor's bank accounts at Cabrillo Credit Union ("CCU").  Id. at 2.   The levy included accounts in the name of Marsha Gonzalez, Judgment Debtor's spouse.  Id.   CCU responded to the levy by freezing $24,926.58 ("Levied Funds").[1]  Id.   On July 6, 2020, Ms. Gonzalez filed a Claim of

---

[1] While CCU froze $24,926.58 according to Judgment Creditor's motion [see Oppo. at 2; see also ECF No. 100, Declaration of Alexander J. Kessler in Support of Judgment Creditor's Opposition to Marsha Gonzalez's Claim of Exemption Re Levy on Cabrillo Credit Union ("Kessler Decl.") at ¶ 5], the United States Marshal ultimately only levied $24,869.55.  ECF No. 109-1,

1  Exemption seeking release of all of the Levied Funds.  Id. at 4; see also ECF No. 103 ("COE.")

2  at 7; and Kessler Decl. at ¶ 6 and Exh 2 (Claim of Exemption).

3  On July 16, 2020, Judgment Creditor filed an opposition to Ms. Gonzalez's claim of

4  exemption.  Oppo.  On August 13, 2020, the Court held a hearing regarding Judgment Creditor's

5  Pending Opposition to Ms. Gonzalez's Claim of Exemption Re Levy on Cabrillo Credit Union.  ECF

6  Nos. 107 and 108.  Mr. Alexander Kessler appeared on behalf of Judgment Creditor and Mr.

7  Brandon Smith appeared on behalf of claimant Ms. Gonzalez ("Claimant").  Id.  During the

8  hearing, the attorneys determined that they needed to conduct additional discovery and submit

9  additional evidence.  ECF No. 108.  In light of their request, the Court ordered the parties to

10  complete the additional discovery discussed during the hearing on or before October 16, 2020,

11  Claimant to file her Supplemental Response on or before November 6, 2020, and Judgment

12  Creditor to file her response on or before November 20, 2020.  Id. at 1.  The Court further

13  ordered the U.S Marshals Service to hold the levied funds until the Court enters an order directing

14  the funds to be released or returned.  Id. at 2.

15  **FACTUAL BACKGROUND**

16  On April 13, 2015, Claimant filed for divorce from Judgment Debtor.  ECF No. 103-1,

17  Declaration of Marsha Gonzalez in Support of Claim Of Exemption ("Gonzalez Decl.") at Exh. B.

18  On December 7, 2015, Claimant and Judgment Debtor executed a Marital Settlement

19  Agreement ("MSA").  Id. at ¶ 5, Exh. D.  That same day, Claimant and Judgment Debtor executed

20  a quitclaim deed which transferred title of the marital residence solely to Claimant.   Id. at ¶ 6,

21  Exh. E; see also COE at 4.

22  On December 14, 2015, Judgment Debtor pled guilty to crimes associated with the

23  allegations made in the complaint and was later incarcerated for twenty-one months.  Oppo. at

24  2.  In February 2017, Judgment Debtor was released from custody and returned to the marital

25

26  Supplemental Declaration of Masha Gonzalez in Support of Claim of Exemption ("Gonzalez Supp.

27  Decl.") at  ¶ 17 ($10,303.77 from CCU bank account xxxxxx7237 S 0001), ¶ 21 ($13,209.49 from CCU bank account  xxxxxx7237 S 0000), ¶ 30 ($1,356.29 from CCU bank account

28  xxxxxx7237 S 0080), ¶ 32, and Exh. C.

16CV750-W(BLM)

home to live with Claimant.  ECF No. 111-1, Declaration of Alexander J. Kessler In Support of Judgment Creditor's Supplemental Opposition to Marsha Gonzalez's Claim of Exemption Re Levy on Cabrillo Credit Union ("Supp. Kessler Decl.") at Exh. 1, Deposition of Marsha Gonzalez at 13 and Exh 2, Deposition of Armando Gonzalez at 76.

In July 2018, Claimant was informed that her divorce lawyer died unexpectedly, and that her divorce from Judgment Debtor was never finalized and would need to be refiled.  Gonzalez Decl. at ¶¶ 14-19; see also ECF No. 103-3, Declaration of Brandon M. Smith in Support of Claim of Exemption ("Smith Decl.") at ¶ 5.  On July 20, 2020, Claimant and Judgment Debtor filed a petition for dissolution of divorce.  Smith Decl. at ¶ 10, Exh. B.  On July 29, 2020, Claimant and Judgment Debtor signed and executed an addendum to the MSA before a licensed notary.  Id. at ¶ 9, Exh. A.

In June 2019, Claimant borrowed $98,454.52 from her mother to obtain a secured loan from CCU in the amount of $90,000.  Gonzalez Supp. Decl. at ¶ 22, Exh. E.  Pursuant to CCU's loan requirements, $90,005.00 was deposited into CCU bank account xxxxxx7237 S 0000 to secure the loan.  Id. at ¶ 24, Exh. F.  The remaining $8,037.11 was deposited into Claimant's checking account, xxxxxx7237 S 0080.  Id.  On June 26, 2020, the U.S. Marshals levied Claimant's accounts and seized $13,209.49 from account xxxxxx7237 S 0000[2] and $1,356.29 from account xxxxxx7237 S 0080.  Id. at ¶¶ 30, 32, Exh. C.

On April 27, 2020, Claimant's mother passed away from COVID-19 related complications.  Id. at ¶ 12.  As the beneficiary of her mother's life insurance policy, Claimant received a check for $10,303.50 which she deposited into CCU bank account xxxxxx7237 S 0001.  Gonzalez Decl. at ¶¶ 23-24, Exh. H; Gonzalez Supp. Decl. at ¶¶ 13-15, Exhs. B & D.  On June 26, 2020, the U.S. Marshals levied $10,303.77 from this account.  Gonzalez Supp. Decl. at ¶ 17, Exh. C.

---

[2] Account xxxxxx7237 S 0000 had a balance of $95,497.91 at the time the levy was executed.  ECF No. 109 ("Supp. COE") at 3.  CCU only permitted the U.S. Marshals to levy $13,209.49 because the remaining money was collateral for the secured loan.  Id.; see also ECF No. 109-1, Supplemental Declaration of Marsha Gonzalez in Support of Claim of Exemption ("Gonzalez Supp. Decl.") at ¶ 21, Exh. C.

16CV750-W(BLM)

On July 6, 2020 Claimant filed her claim of exemption with the U.S. Marshals.  COE. at 7.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 69, a money judgment is enforced by a writ of execution. Fed. R. Civ. P. 69(a)(1). "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Id. Under California law, a judgment creditor may enforce a money judgment by levying the deposit account of the judgment debtor and his spouse or registered domestic partner.  See Cal. Code Civ. P. ("CCP") §§ 699.710, 700.160.  After a judgment creditor levies a judgment debtor's deposit account, the judgment debtor and his spouse or registered domestic partner may claim the funds levied as exempt from the enforcement of a money judgment.  See CCP §§ 703.010, 703.020, 703.030.  The exemption claimant bears the burden to establish the exemption.  CCP § 703.580(b). A claim of exemption must include the following: (1) the claimant's name and mailing address; (2) the name and last known address of the judgment debtor if the claimant is not the judgment debtor; (3) a description of the property claimed to be exempt; (4) a financial statement if required by section 703.530; (5) a citation to the provision relied upon for the exemption; and (6) a statement of the facts necessary to support the claim.  CCP§ 703.520.  An opposition to a claim of exemption must include: "(a) [a]n allegation either(1) that the property is not exempt under the provision of this chapter or other statute relied upon or (2) that the equity in the property claimed to be exempt is in excess of the amount provided in the applicable exemption" and "(b) [a] statement of facts necessary to support the allegation." CCP § 703.560.

"The claim of exemption and notice of opposition to the claim of exemption constitute the pleadings, subject to the power of the court to permit amendments in the interest of justice."  CCP § 703.580(a).  The court may make its determination if it finds that the claim of exemption, financial statement, if required by Section 703.530, and the notice of  opposition provide sufficient facts.   CCP § 703.580(c).   Otherwise,  the court  may continue the hearing for the production of additional oral or documentary evidence.  Id.

1      The court should construe the exemption statutes to the benefit of the judgment debtor

2  in order to "facilitate the debtor's financial rehabilitation" and to "shift[] social welfare

3  costs from the community to judgment creditors." See Ford Motor Credit Co. v. Waters, 83 Cal.

4  Rptr. 3d 826, 830 (Super. Ct. 2008) (citation omitted); see also Kono v. Meeker, 126 Cal. Rptr.

5  3d 208, 211 (Ct. App. 2011).   However, "[e]xemptions under California law are wholly

6  statutory and cannot be enlarged [or diminished] by the courts." In re Hernandez, 483 B.R.

7  713, 724 (B.A.P. 9th Cir. 2012) (citing Ford Motor Credit Co., 83 Cal. Rptr. 3dat 829-30));

8  Sourcecorp, Inc. v. Shill, 142 Cal. Rptr. 3d 414, 416 (Ct. App.2012).

9  **DISCUSSION**

10      Claimant argues that all of the levied money is her separate property and should be

11  released to her.   COE.   Judgment Creditor argues that Claimant's claim of exemption is

12  procedurally and substantively defective and that Claimant has not established that the funds

13  are her separate property.   Oppo.

14      A.   CCU Account xxxxxx7237 S 0001 – Life Insurance Benefits

15      Claimant provided evidence establishing that she received $10,303.50 in life insurance

16  proceeds after the death of her mother in 2020 and that the proceeds were deposited into

17  account xxxxxx7237 S 0001 and levied by the U.S. Marshals.   Gonzalez Decl. at ¶¶ 22-25. Exhs.

18  H & I; Gonzalez Supp. Decl. at ¶¶ 13-15, Exhs. B-D.   Judgment Creditor "acknowledges that the

19  documents [Claimant] submitted in her supplemental papers (ECF Doc 109-1) tend to support

20  her claim as to the life insurance proceeds." ECF No. 111 ("Supp. Oppo.") at 1. The Court agrees

21  and finds that the $10,303.77 seized from account xxxxxx7237 S 0001 is Claimant's separate

22  property. See Fam. Code § 770(a)(2).   Therefore, the Court **RECOMMENDS** that Judgment

23  Creditor's Opposition to Marsha Gonzalez's Claim of Exemption Re Levy On Cabrillo Credit Union

24  Account xxxxxx7237 S 0001 be **DENIED** and the U.S. Marshal **ORDERED** to release to Ms.

25  Gonzalez $10,303.77 in Levied Funds being held pursuant to the bank levy.

26      B.   CCU Accounts xxxxxx7237 S 0000 and 0080

27      Claimant contends that all of the money in her CCU savings (xxxxxx7237 S 0000) and

28  checking (xxxxxx7237 S 0080) accounts is her separate property.   COE at 1; Supp. COE at 1.

6

1   Initially, Claimant argued that the terms of the MSA dictated that the levied money was her

2   separate property.  COE at 2-4, 7-9.  A number of legal and factual concerns were raised during

3   the August 2020 hearing.  Claimant did not explicitly re-raise this argument in her supplemental

4   opposition and did not address the legal or factual issues that were raised during the hearing.[3]

5   Supp. COE.  Rather, Claimant notes that she and Judgment Debtor continue to live together in

6   a "platonic, necessity based friendship" and asserts that the levied funds are her separate

7   property based upon how they were acquired, maintained, and used.  Id. at 1-5.

8        To support her claim that the funds are her separate property, Claimant states that the

9   accounts are solely in her name, that Judgment Debtor does not have any legal right to access

10   or use the accounts, and that she has not commingled the funds with Judgment Debtor's assets.

11   Supp. COE. at 3-4; see also Gonzalez Supp. Decl. at ¶ 28-29.  With regard to the savings account,

12   Claimant further argues that the loan money obtained from her mother was used to pay debts

13   solely incurred by Claimant.  Supp. COE at 3; see also Gonzalez Supp. Decl. at ¶ 31.   With

14   regard to the checking account, Claimant acknowledges that she used funds from the account

15   in July 2019 to pay $21,000 to Citibank for a credit card in Judgment Debtor's name.  Supp.

16   COE at 4; see also Gonzalez Supp. Decl. at ¶ ¶ 33-35, Exh. G.  Claimant states that while the

17   card is in Judgment Debtor's name, she is the only person who has used the credit card since

18   the March 2015 separation.  Id.  Claimant explains that she has been unemployed since 1996

19   and had a very difficult time obtaining a credit card in her name with a reasonable interest rate

20   so she used Judgment Debtor's credit card to take advantage of the lower interest rate.  Id.

21   Claimant declares that the $21,000 payment covered a debt that she incurred.   Id.

22        Judgment Creditor argues that the seized money is community property and subject to

23   levy.  Supp. Oppo. at 1.  Judgment Creditor points out that Claimant and Judgment Debtor

24   remain married and still live together in the marital house.  Id. at 4; see also Kessler Decl. at ¶

25   ¶ 11-12.  Moreover, Claimant controls the account into which Judgment Debtor's retirement

---

[3] Claimant merely states that she incorporates her arguments from her initial memorandum of points and authorities.  Supp. COE at 4

7

16CV750-W(BLM)

income is deposited and Claimant pays all of the household expenses and provides money to Judgment Debtor when asked.  Id.; see also  Supp. Kessler Decl. at Exh 2, Deposition of Armando Gonzalez at 74-75.  Judgment Creditor asserts that the levied money was obtained after the MSA was executed and therefore the MSA does not control the designation of the levied money. Id. at 5.  Finally, Judgment Creditor argues that Claimant and Judgment Debtor's alleged separation does not qualify as a separation under section 70 of the Family Code.  Id. at 4.

Section 760 of the California Family Code states that "except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."  Fam. Code, § 760.  Here, it is undisputed that Claimant and Judgment Debtor were legally married in June 2019 when Claimant borrowed $98,454.52 from her mother.  Accordingly, the money was community property unless it comes within a specified exception.  Fam. Code, § 760 (Law Revision Commission Comments).

Claimant argues that the money is her separate property because it was obtained after she and Judgment Debtor separated.  COE at 7-9.  Section 771(a) of the California Family Code states that "[t]he earnings and accumulations of a spouse . . . after the date of separation of the spouses, are the separate property of the spouse."  Fam. Code, §771(a).  The parties disagree as to whether the Claimant and Judgment Debtor legally separated.  Claimant argues that they separated on March 1, 2015, the date of separation set forth in her Petition for Dissolution of Marriage filed with the San Diego Superior Court.  Gonzalez Decl. at ¶ 3, Exh. B. Claimant also asserts that the MSA established that they were separated.  COE at 2-3.  Judgment Creditor argues that the Gonzalezes are still married and not validly separated.  Supp. Oppo.

Section 70 of the California Family Code states that

(a) "Date of separation" means the date that a complete and final break in the marital relationship has occurred, as evidenced by both of the following:

(1) The spouse has expressed to the other spouse the intent to end the marriage.

(2) The conduct of the spouse is consistent with the intent to end the marriage.

(b) In determining the date of separation, the court shall take into consideration

8

all relevant evidence.

(c) It is the intent of the Legislature in enacting this section to abrogate the decisions in In re Marriage of Davis (2015) 61 Cal.4th 846 and In re Marriage of Norviel (2002) 102 Cal.App.4th 1152.[4]

Fam. Code, § 70. "Spouses are legally separated for purposes of section 70 if (1) at least one spouse entertains the subjective intent to finally end the marriage, and (2) there is objective evidence of conduct demonstrating that intent." In re Marriage of Bittenson, 2020 WL 4332379 at *1–2 (unpublished) (citing In re Marriage of Manfer, 144 Cal.App.4th 925, 930 (2006)). "Simply stated, the date of separation occurs when either of the parties does not intend to resume the marriage and his or her actions bespeak the finality of the marital relationship." Id. (quoting In re Marriage of Hardin, 38 Cal.App.4th 448, 451(1995)). "The date of separation is a factual issue established by a preponderance of the evidence." In re Marriage of Lee & Lin, 41 Cal. App. 5th 698, 701–702 (2019).

Here, although the MSA was executed in December 2015, and Claimant and Judgment Debtor both state that they intended to end the marriage [see Gonzalez Supp. Decl. at ¶ 4; see also ECF No. 109-2, Declaration of Armando Gonzalez in Support of Marsha Gonzalez's Claim of Exemption at ¶¶ 2-3], their conduct has not been "consistent with the intent to end the marriage." Fam. Code, § 70(a)(2). First, more than two years after learning that their divorce was not finalized, Claimant and Judgment Debtor remain married. Second, Claimant and Judgment Debtor still live together along with Judgment Debtor's brother.[5] Third, while Claimant

---

[4] In re Marriage of Bittenson, 2020 WL 4332379, at *1 (Cal. Ct. App., July 28, 2020) (unpublished) ("The Legislature amended section 70 to abrogate prior case law (In re Marriage of Davis (2015) 61 Cal.4th 846 and In re Marriage of Norviel (2002) 102 Cal.App.4th 1152) that living in separate residences is an indispensable prerequisite to establish the date of separation).

[5] Claimant states that she and Judgment Debtor are not intimate with each other and that she considers herself separated from Defendant. Gonzalez Supp. Decl. at ¶ 10. She notes that they continue to live together so that Judgment Debtor can help her with basic life necessities since she suffers from multiple sclerosis and has been disabled since 1996. Id. at ¶¶ 8-9. In exchange for his help, Judgment Debtor has a place to stay and does not have to contribute to most of

16CV750-W(BLM)

states that the money borrowed from her mother was her separate property and used only for debts incurred by her [Gonzalez Supp. Decl. at ¶¶ 22-29], the supporting bank records indicate that the money was deposited into her savings account, transferred in large payments to her checking account, and then the checking account money was used to pay various expenses including two significant credit card bills, and was withdrawn in large amounts of cash [see id. at Exh. G]. Claimant has not established that the borrowed funds were not commingled or used to pay expenses incurred by Judgment Debtor or the household. Fourth, Judgment Debtor's income from the Department of Homeland Security, approximately $2000 per month, is directly deposited into a CCU bank account controlled by Claimant.  Supp. Kessler Decl. at Exh 2., Deposition of Armando Gonzalez at 74-75.  Judgment Debtor testified that he thinks that he shares the account with Claimant, but that he has not "accessed that money since [he was] released [from prison]." Id. at 75-76.  Judgment Debtor believes that this money is used to pay for regular household expenses although he is not positive.  Id.  Fifth, Judgment Debtor has an American Express credit card that he uses, and Claimant pays the bill.  Id. at 83-84.  Similarly, Claimant used joint funds to pay a substantial credit card debt on a credit card in Judgment Debtor's name but allegedly used only by Claimant.  Gonzalez Supp. Decl. at ¶¶ 33-35.  While Claimant states that she is the only one who used the credit card, she has not established that the credit card debt was not amassed as the result of household or family expenditures.  See id. at ¶ 35 (payment reflects "my obligation to pay the debt that I have incurred on that credit card.").  Sixth, Claimant states that she has been unemployed since 1996 and the evidence indicates that she is using Judgment Debtor's money to pay her expenses, as well as those incurred by Judgment Debtor and the household.

"[T]he exemption claimant has the burden of proof." Cal. Code Civ. P. § 703.580(b); see also United States v. Washington, 2020 WL 1216784, at *2 (C.D. Cal., Feb. 18, 2020) ("Exemption provisions are "liberally construed in favor of the debtor." Nevertheless, at the hearing on a claim of exemption, the judgment debtor bears the burden of proof that property

---

the household expenses.  Id.

16CV750-W(BLM)

1  is exempt from collection on a money judgment. Cal. Civ. Proc. Code § 703.580(b)) (internal

2  citations omitted).  Based upon the facts presented to the Court and as set forth above, Claimant

3  has not established that the levied money in accounts xxxxxx7237 S 0000 and S 0080 was her

4  separate property. Claimant also has not established that the MSA governs the levied money

5  and makes it her separate property.  Claimant also has not established that she and Judgment

6  Debtor are legally separated, that they have maintained their finances as separate property, or

7  that the money borrowed from Claimant's mother is Claimant's separate property.  Rather, the

8  evidence establishes that Claimant and Judgment Debtor commingled their finances, Judgment

9  Debtor's income is deposited into an account controlled by Claimant and used to pay the family's

10  expenses, Claimant does not have independent income that she uses to pay her own expenses,

11  Claimant uses joint funds to pay credit card bills incurred by both Claimant and Judgment Debtor,

12  and Claimant provides spending money to Judgment Debtor from joint accounts when Judgment

13  Debtor needs money.[6]    Accordingly, the Court **RECOMMENDS** that Judgment Creditor's

14  Opposition to Marsha Gonzalez's Claim of Exemption Re Levy On Cabrillo Credit Union accounts

15  xxxxxx7237 S 0000 and xxxxxx7237 S 0080, from which the U.S. Marshal levied a total of

16  $14,535.78, be **GRANTED** and the U.S. Marshal **ORDERED** to release to Judgment Creditor

17  $14,535.78 of Levied Funds being held pursuant to the bank levy.

18  ///

---

[6] See United States v. Durnell, 2020 WL 2113672, at *3 (C.D. Cal., May 4, 2020) (finding that the parties were not engaging in conduct consistent with a genuine intent to end the marriage and granting the government's request for an adverse inference that the parties' petition for legal separation was a "fraud on the United States in the context of [a] garnishment action" where  husband moved into an apartment upon his release from prison and both he and his wife's name were on the lease, husband made no rent payments, and deposition testimony indicated an ongoing relationship extending beyond separation); Fallay v. City and County of San Francisco, 2017 WL 5127716, at *3 (N.D. Cal., Nov. 6, 2017) (concluding that both spouses' conduct "is consistent with [their] intent to end the marriage" and finding the parties to be separated despite living together where the parties "were hardly on speaking terms until the death of [their] son," husband did not even know where wife worked, the parties closed their joint bank account, the parties  "have nothing to do with" each other's money, they sleep on different floors of the same house, and there "is no evidence in the record to refute the contention that [the parties] have separated").

16CV750-W(BLM)

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Judgment Creditor's Opposition to Marsha Gonzalez's Claim of Exemption Re Levy On Cabrillo Credit Union account xxxxxx7237 S 0001; (3) directing  the U.S. Marshal to release to Ms. Gonzalez $10,303.77 in Levied Funds being held pursuant to the bank levy; (4) granting Judgment Creditor's Opposition to Marsha Gonzalez's Claim of Exemption Re Levy On Cabrillo Credit Union accounts xxxxxx7237 S 0000 and xxxxxx7237 S 0080, from which the U.S. Marshal levied a total of $14,535.78, and (5) directing the U.S. Marshal to release to Judgment Creditor the $14,535.78 of Levied Funds being held pursuant to the bank levy.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than February 5, 2021**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than February 12, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  1/22/2021

Hon. Barbara L. Major
United States Magistrate Judge

16CV750-W(BLM)